**John Brett ALLEN, Plaintiff,**

v.

**John T. HADDEN and United States Parole Commission, Defendants.**

Civ. A. No. 81–K–1863.

United States District Court,
D. Colorado.

Feb. 7, 1996.

Leonard Davies, Denver, CO, for Petitioner.

John M. Hutchins, Assistant U.S. Attorney, Denver, CO, for Respondents.

## MEMORANDUM OPINION AND ORDER ON REMAND

KANE, Senior District Judge.

This case is before me following the Tenth Circuit's ruling in *Allen v. Hadden (Allen IV)*, 57 F.3d 1529 (10th Cir.1995), in which John Brett Allen appealed my denial of his motion to vacate his convictions on grounds that the federal government and the state of Texas breached their plea agreements.

The Court of Appeals reversed my decision insofar as I concluded Allen failed to establish the parole commission had utilized the dismissed counts to determine his parole eligibility date and ordered a recalculation of Allen's parole eligibility without relying on the dismissed counts. The appeals court held that breach of the plea agreement by the parole commission was not so substantial as to justify withdrawal of Allen's guilty plea. It discussed other alleged breaches of the plea agreement by the government and upheld my denial of relief based on such allegations because it concluded any such breaches lacked prejudice or adverse effect.

I address the action required following remand by the Tenth Circuit. I examine Petitioner's Motion for Compliance with Established Resolution for this Case requesting me to allow Allen the opportunity to withdraw his guilty plea in this case; the Memorandum in Support of Unification and Harmonization of Tenth Circuit Rulings in this Case submitted by Allen's counsel; and Peti-

tioner's Pro Se Memorandum in Support of an Order Implementing the Established Resolution of this Case submitted by Allen.

I deny Allen's request for permission to withdraw his guilty plea and direct the parole commission to redetermine Allen's parole eligibility without consideration of the thirty-four counts dismissed as part of the plea agreement.

## I. *Background.*

Allen appealed my denial of his motion to vacate his convictions on the grounds that the federal government and the state of Texas breached their plea agreements. On June 20, 1995, the Court of Appeals affirmed in part, reversed in part and remanded in part. *Allen IV,* 57 F.3d at 1541.

I review the complicated history of this case as outlined by the appeals court. Any attempt at understanding the convoluted history and rulings in this case must first recognize that the Sentencing Reform Act of 1984 has no bearing or relevance. The law existing before the effective date of the Act, November 1, 1987, applies.

In 1980 authorities charged Allen in federal and state court in Texas with several offenses related to a complex drug conspiracy, including the importation of marijuana, and the exportation of currency to Mexico. Allen and the government bargained for his pleas in both jurisdictions. Pursuant to the agreements, Allen pled guilty in federal court in the Western District of Texas to two counts of a thirty-six count indictment, and in state district court in Texas, to the single charge alleged against him. In return, the two jurisdictions dismissed the remaining counts against Allen, and promised him certain concessions. Specifically, Allen's federal plea agreement provided that in exchange for his guilty plea to the two counts of the thirty-six count indictment, and his agreement to testify against his codefendants, the government would dismiss the remaining counts.

When Allen appeared in federal court for his re-arraignment hearing on September 4, 1980, the government agreed to an additional concession when the following colloquy occurred between Mr. Grigson, counsel for Al-len, and Mr. Pierce, counsel for the government:

THE COURT: You have expressed my understanding of the agreement, which was made known to the Court, and I agree to be bound by that.

MR. GRIGSON: That's our understanding, Your Honor, and that at the time of sentencing if the Court accepts the plea, that the Government will move to dismiss the remaining counts of the indictment, and they would have no adverse effect on the defendant, and the counts will be dismissed with prejudice as I understand it, at the time of sentencing.

THE COURT: The Government agrees to do that?

MR. PIERCE: That's correct, Your Honor.

*Allen IV,* 57 F.3d at 1531–32 (quoting from the record on appeal). Following the above exchange, the district court accepted Allen's pleas of guilty and ordered him to serve two five-year consecutive sentences, in accordance with the plea agreement.

Allen's written plea agreement in state court provided the state prosecutors would: (1) recommend that Allen serve all confinement resulting from his state sentence in a federal correctional institution, concurrently with the federal sentence, and (2) not file a detainer against Allen with federal authorities. On October 2, 1980, Allen appeared in state court, pled guilty to the single charge, and, consistent with his plea agreement, was sentenced to a term of not less than two nor more than ten years, to run concurrently with his federal sentence.

Thereafter, Allen entered a federal penitentiary where he began serving the concurrent federal and state sentences. He commenced this case on October 22, 1981, by filing a petition for a writ of habeas corpus in the District of Colorado pursuant to 28 U.S.C. § 2241. Allen asserted the United States Parole Commission erroneously computed his parole eligibility date by relying on dismissed counts in his indictment to determine that date in violation of his federal plea agreement.

I ruled the government violated Allen's federal plea agreement because the parole commission had improperly used the dismissed counts of the federal indictment in its parole eligibility determination. *See Allen v. Hadden (Allen I)*, 536 F.Supp. 586 (D.Colo. 1982). I found the prosecutor agreed at the re-arraignment hearing that the dismissed counts would have no adverse effect on the defendant. *Id.* at 597. Because the parole commission considered the offenses alleged in the dismissed counts in making its parole determination, I ruled the dismissed counts had an adverse effect on Allen.

I concluded the government had violated the plea agreement and remanded the matter to the parole commission with the instruction that "the parole commission must disregard the dismissed counts. If it does not, then the petitioner must be given an opportunity to withdraw his guilty plea." *Id.* at 598. Additionally, I held the parole commission impermissibly used the same factors to determine the offense severity and to justify exceeding its then existing guidelines. *Id.* I retained jurisdiction to issue any orders that should be necessary in the future. *Id.* at 600.

The government filed a notice of appeal from my order in *Allen I* on June 4, 1982. Thereafter, on the government's motion, the appeal was dismissed, but not before Allen was released on a fully secured appeal bond. Following the dismissal, the government filed a motion to revoke Allen's appeal bond intending that Allen serve the unexpired portion of his sentence. Allen responded I should not revoke the appeal bond, but order that the parole commission release him immediately on parole.

I denied the government's motion to revoke Allen's appeal bond. *See Allen v. Haddon (Allen II)*, 558 F.Supp. 400, 403 (D.Colo. 1983). I noted the parole commission continued to calculate Allen's parole eligibility date improperly by double counting his offenses. On appeal from *Allen II*, the Court of Appeals reversed and concluded that "[i]n our view, this use of the three convictions does not amount to double-counting." *Allen v. Hadden (Allen III)*, 738 F.2d 1102, 1105 (10th Cir.1984). The appeals court remanded the matter to this court, and on August 22, 1984, I dismissed the petition.

Following the dismissal, on September 24, 1984, I granted the government's renewed motion to revoke Allen's appeal bond, and ordered him to surrender to serve the balance of his sentence. Through no fault of his own, Allen did not surrender as ordered.[1] On January 23, 1990, the government discovered Allen had not surrendered five and one-half years earlier. The next day, I granted the government's motion and issued a bench warrant for Allen. Allen was arrested in Florida on February 6, 1990, and incarcerated in a federal penitentiary.

Two years later Allen filed *pro se* his Motion for Relief Pursuant to this Court's Established Law of the Case by Vacating Invalid Convictions. Allen argued the government breached its promise that the dismissed counts of the federal indictment would have no adverse effect on him. He claimed the dismissed counts had adversely affected him in breach of the plea agreement because: (1) the parole commission continued to rely on the dismissed counts to determine his parole eligibility date; (2) federal agents had mentioned the dismissed counts of his federal indictment in affidavits used to secure search warrants for his properties in 1990; (3) information about the dismissed counts was received by the probation officer and incorporated in a presentence report prepared to aid in his sentencing in an unrelated case; and (4) the parole commission and the Bureau of Prisons relied on the dismissed counts to justify adverse classification decisions. Allen did not seek recalculation of his parole eligibility date as a result of the alleged breaches, but an order vacating the federal convictions entered on his guilty pleas over a decade earlier.[2]

1. Neither Allen, his attorney, nor the United States Marshals Service received a copy of the order directing Allen to surrender to serve the remainder of his sentence.

2. Allen also asserted Texas violated the state plea agreement by (1) incarcerating him in a state facility pursuant to the state sentence, and (2) filing a detainer against him with federal authorities. Allen sought an order vacating his state

Allen moved for summary judgment based on his motion to vacate his convictions. I appointed counsel for Allen, and referred the motion to a magistrate judge who conducted an evidentiary hearing on September 4, 1992. Applying a contract law analysis which I later adopted, the magistrate judge construed the government's no adverse effect promise to mean only that the parole commission would not rely on the dismissed counts to determine Allen's parole eligibility date. He rejected Allen's contention that the government's promise meant he would suffer no adverse effect from any government agency based on the dismissed counts. The magistrate judge cited an affidavit of Mr. Grigson, Allen's counsel at the re-arraignment hearing, who was the source of the no adverse effect language. Mr. Grigson stated the "'purpose for mentioning that the dismissed counts would have no adverse effect was to insure that the United States Parole Commission would not use dismissed counts in calculating Mr. Allen's release date on parole.'" *Allen IV,* 57 F.3d at 1533.

The magistrate judge found Allen had failed to present any evidence that the parole commission continued to rely on the dismissed counts to determine his parole eligibility date. Based on his finding that the no adverse effect language referred only to the parole commission, he concluded the government did not breach the federal plea agreement when it mentioned the dismissed counts in affidavits for search warrants, in a presentence report prepared by the probation office to sentence Allen in a separate case, and in institutional files supporting allegedly adverse classification decisions within the federal prison system.[3]

Except for finding that Texas filed a detainer against Allen, the magistrate judge concluded neither the federal government nor the State of Texas had violated the plea agreements. He recommended the district court issue an order to the Bureau of Prisons directing it to give no effect to the Texas detainer filed against Allen. He further recommended denial of Allen's motion to vacate his convictions.

Both parties filed objections to the magistrate judge's findings and recommendations. On July 19, 1993, I adopted the magistrate judge's findings and recommendations and denied Allen's motion to vacate his convictions.[4]

Allen appealed, contending I erred by: (1) concluding the government had not breached its plea agreement; (2) concluding the State of Texas had not breached its plea agreement; and (3) failing to grant summary judgment in his favor. *Allen IV,* 57 F.3d at 1534.

The Court of Appeals conducted a *de novo* review as to whether government conduct had violated the plea agreement. *Id.* The court noted if it found such breach, it would have to remand the case either for specific performance or withdrawal of Allen's guilty plea in accordance with *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971). *Allen IV,* 57 F.3d at 1534. Importantly, the appeals court noted "'[t]he choice of remedy rests with the court and not the defendant.'" *Id.* at 1534–35 (quoting *United States v. Canada,* 960 F.2d 263, 271 (1st Cir.1992)).

The Court of Appeals determined the plea agreement, pursuant to which the government promised to dismiss the remaining

conviction. Relying on my statement in *Allen I* that if the parole commission did not disregard the dismissed counts, "then the petitioner must be given an opportunity to withdraw his guilty plea," *Allen I,* 536 F.Supp. at 597, he filed to withdraw his state guilty plea in Texas. The state court denied Allen's motion without a hearing or opinion, and the Texas Court of Criminal Appeals denied his appeal without opinion. Pursuant to 28 U.S.C. § 2255, Allen moved to withdraw his federal guilty pleas in the United States District Court for the Western District of Texas. That court denied Allen's motion. *See Allen v. United States,* No. A–91–CA–259 (W.D.Tex. June 13, 1991).

3. Concerning the state plea agreement, the magistrate judge rejected Allen's argument that Texas could not incarcerate him in a state penitentiary under the state plea agreement. However, the magistrate judge recognized Texas had breached its plea agreement when it filed a detainer against Allen with federal authorities.

4. I ordered the Bureau of Prisons to give no effect to the detainer lodged against Allen by the State of Texas. Neither party challenged this issue on appeal.

counts of the federal indictment with prejudice and that the counts would have "no adverse effect" on Allen, applied to the government as a whole and not only the parole commission. *Allen IV*, 57 F.3d at 1536. It found my ruling that the no adverse effect term applied only to the parole commission to be clearly erroneous.

The appeals court ruled that, while theoretically possible that the sixty-month parole eligibility date could have been determined other than by the parole commission's reliance on the dismissed counts, Allen's "indirect" evidence that the obvious explanation was that the dismissed counts were considered, coupled with the government's failure to rebut that evidence, satisfied the defendant's burden to prove breach of the plea bargain. *Id.* at 1536–37. However, the court specifically determined, "[t]he government's breach of the plea agreement is not so substantial as to justify withdrawal of Petitioner's guilty plea." *Id.* at 1537 n. 7.

The appeals court held the government did not violate the plea agreement by mentioning the dismissed conduct in search warrant affidavits, *id.* at 1537–38, and did not breach the plea agreement when it referred to the dismissed counts in the presentence report in an unrelated case, *id.* at 1538. It further held although Allen demonstrated the parole commission effectively relied on the dismissed counts to assign him original jurisdiction classification, he failed to show the classification caused him any adverse effects so as to violate the plea agreement. *Id.* at 1538–39.

The Court of Appeals also determined, although Allen established the Bureau of Prisons relied upon the dismissed counts to assign him sophisticated criminal activity (SCA) classification, he failed to show that such classification caused him adverse effect in breach of the plea agreement. *Id.* at 1539–40. Finally, it held I was not clearly erroneous in finding the state plea agreement did not prohibit the state from imprisoning the petitioner in the state facility to serve the state sentence if the petitioner was prematurely released from federal confinement. *Id.* at 1540–41.

In sum, the Court of Appeals reversed my ruling that the parole commission did not breach the plea agreement when it determined Allen was eligible for parole in sixty months. It also made the specific determination that breach of the plea agreement was not so substantial as to justify withdrawal of Allen's guilty plea. The appeals court remanded for recalculation of Allen's parole eligibility date without considering the counts that were dismissed as part of the plea agreement.

With respect to other alleged breaches of the plea agreement by the government, the court of appeals upheld my denial of relief based on those allegations because it concluded any such governmental action lacked prejudice or adverse effect.

Following this decision of the court of appeals, Allen filed *pro se* the instant Motion for Compliance with Established Resolution of This Case. I ordered the government to respond. At a status conference on November 14, 1995, attorney Leonard Davies appeared on behalf of Allen. I gave Mr. Davies permission to submit a proposed order with respect to the parole commission and any supporting briefs. I authorized a response by the government.

On December 5, 1995, Mr. Davies, on behalf of Allen, filed a Memorandum in Support of Unification and Harmonization of Tenth Circuit Rulings in this Case together with a proposed order. Also on December 5, 1995, Allen filed Petitioner's Pro Se Memorandum in Support of an Order Implementing the Established Resolution for this Cause [sic]. The government filed Respondents' Memorandum Brief in Opposition to the Requests of the Petitioner and his Attorney to Order the Parole Commission to End the Petitioner's Supervision without the Parole Commission Recalculating the Petitioner's Term of Parole and to the Petitioner's Renewed Request for the Vacation or Withdrawal of his Guilty Plea.[5]

5. The government notes it is unclear whether Allen is *pro se* or represented and asserts he is not constitutionally entitled to hybrid representa-

tion. *See McKaskle v. Wiggins*, 465 U.S. 168, 183, 104 S.Ct. 944, 953–54, 79 L.Ed.2d 122 (1984). Despite the anomaly, and without con-

## II. *Analysis.*

### a. *Request for Opportunity to Withdraw Guilty Plea.*

■ Allen relies on the court of appeals' finding that the parole commission relied on the dismissed counts to calculate his parole eligibility date and my earlier ruling that if the parole commissioner persisted in relying on the dismissed counts in making a parole determination, he must be given an opportunity to withdraw his guilty plea. *See Allen I,* 536 F.Supp. at 595, 597. He maintains the law of the case doctrine requires that he be given an opportunity to withdraw his guilty plea based on *Santobello v. New York,* 404 U.S. 257, 263, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971).

In *Santobello,* the defendant entered a guilty plea after the prosecutor agreed to make no recommendation as to sentence. Months later, at defendant's appearance for sentencing, a new prosecutor recommended the maximum sentence which the judge (stating he was not influenced by the recommendation) imposed. The defendant attempted unsuccessfully to withdraw his guilty plea and his conviction was affirmed on appeal. On petition, the Supreme Court vacated the judgment and remanded to the state court for further consideration as to whether the circumstances required only that there be specific performance of the agreement on the plea or whether the petitioner should be afforded the opportunity to withdraw his guilty plea. Clearly, the Court envisaged breach of a plea agreement in some circumstances might justify withdrawal of a guilty plea and, in others, not.

■ The law of the case "is a rule to be applied at the sound discretion of the court to effectuate the proper administration of justice." *United States v. Carson,* 793 F.2d 1141, 1147 (10th Cir.1986). " '[It] merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.' " *Id.* (quoting *Messinger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912)).

Here, the appeals court exercised its power to conduct a *de novo* review as to whether various aspects of government conduct had violated the plea agreement as well as the extent and effect of the alleged violations. It concluded the parole commission had violated the agreement by utilizing the dismissed counts but that the breach was not so substantial as to justify withdrawal of Allen's guilty plea. This, rather than my earlier determination in *Allen I,* is now the law of the case.

■ The Tenth Circuit remanded only for the purposes of recalculation of Allen's parole eligibility. This directive precludes me from granting Allen's request for an opportunity to withdraw his guilty plea.

### b. *Directive to Parole Commission.*

■ Allen's counsel's proposed order requires me to direct the parole commission to parole Allen "on the sentences over which it has jurisdiction at his 60 month service date" and, because this date has passed and of the prejudice suffered by Allen, "to terminate the remainder of Petitioner's parolable sentence and special parole terms." (Order attached to Memo Supp.Unification & Harmonization of Tenth Circuit Rulings in this Case.)

Allen maintains the parole commission has created a legitimate expectation of his entitlement to parole at the sixty-month service date. He urges me to recalculate his parole eligibility and order the commission to parole him as of that date, a date now long passed. Citing the history of the case and the government's prejudicial conduct in failing to return him to custody between September 1984 and February 1990, Allen maintains equity requires the parole commission to credit him with service for that period. He urges that the remainder of his parolable sentence and special parole term be terminated.

The government responds that the parole commission, rather than this court, is the proper body to give Allen a new parole hearing *nunc pro tunc* and to recalculate Allen's eligibility for parole, subject to judicial review. It maintains Allen deliberately failed to notify this court and the appeals court that he had appealed the March 1991 parole com-

doning this practice, I consider the briefs filed both by Allen and his counsel.

**230**

mission decision upon which my decision and that in *Allen IV* are based to the full parole board, which had rendered a final decision in September 1991 and of which there has been no judicial review.

Allen replies through his counsel that the commission already conducted a new parole hearing *nunc pro tunc* on October 19, 1995. The examiner recommended Allen be required to serve 123 months on his parolable sentence because he committed offenses while on bond. Allen asserts the new recommendation is outside the parole commission's jurisdiction and unconstitutionally subjects him to double jeopardy. He maintains, because of his scheduled release in March 1997 and the tardiness of the administrative process, ordering the parole commission to conduct a new hearing would deny him meaningful relief.

The Tenth Circuit remanded "for recalculation of Petitioner's parole eligibility." *Allen IV,* 57 F.3d at 1541. Congress has, by statute, conferred upon the Parole Commission the sole power to grant or deny parole or to modify an order paroling any eligible prisoner. 18 U.S.C. § 4203. Moreover the commission's determinations to grant or deny parole are committed wholly to agency discretion. 18 U.S.C. § 4218(d); *Smaldone v. United States,* 458 F.Supp. 1000, 1004 (D.Kan.1978).

■ "[J]udicial review of Parole Commission determinations is quite limited. The standard is whether the decision is arbitrary and capricious or is an abuse of discretion." *Fiumara v. O'Brien,* 889 F.2d 254, 257 (10th Cir.1989). *See also Zannino v. Arnold,* 531 F.2d 687, 691 (3rd Cir.1976); *Smaldone,* 458 F.Supp. at 1004; *Baker v. Day,* 436 F.Supp. 593, 595 (W.D.Okla.1977).

The Parole Commission, not I, should properly recalculate Allen's eligibility for parole. Thereafter, its decision will be subject to limited judicial review. Further, I am not empowered to instruct the Parole Commission as to how to exercise its agency discretion beyond the directive of the court of appeals that it not take into consideration the thirty-four counts dismissed as part of the plea bargain entered into on September 4, 1980. I therefore cannot order the commis-

sion, as proposed by Allen's counsel, to exercise its discretion in the manner requested.

For the aforesaid reasons,

IT IS ORDERED IN ACCORDANCE with the decision of the Tenth Circuit Court of Appeals that the United States Parole Commission give John Brett Allen a new parole hearing, *nunc pro tunc,* and redetermine his parole eligibility without relying upon or considering at all the thirty-four counts dismissed as part of the plea bargain entered into by the parties on September 4, 1980.

IT IS FURTHER ORDERED THAT a copy of the Memorandum Opinion and Order on Remand be delivered to the:

United States Parole Commission
North Central Region
10220 North Executive Hills Blvd.
North Pointe Tower Suite 700
Kansas City, MO 64153

IT IS FURTHER ORDERED THAT the United States Attorney shall file on or before May 8, 1996, a certificate showing that this Order has been obeyed and a new parole eligibility date entered in accordance herewith.